*UNITED STATES BANKRUPTCY COURT*
*Martin Luther King Federal Building*
*50 Walnut Street*
*Newark, New Jersey 07102*
*973-645-2464*

*Novalyn L. Winfield*
*Bankruptcy Judge*

October 24, 2011

James D. Donnelly, Esq.
1236 Brace Road, Suite C
P.O. Box 536
Cherry Hill, New Jersey 08003

Jonathan Stone, Esq.
490 Schooley's Mountain Road, Bldg. 3A
Hackettstown, New Jersey 07840-4002

>  RE: In re: Daniel Sean Cotter
>  Case No.: 08-12504 (NLW)
>  Cotter v. Skylands Community Bank, et al.
>  Adv. No.: 11-01619
>  **LETTER OPINION**

Dear Counsel:

The following constitutes the court's findings regarding Daniel Sean Cotter's ("Debtor") motion to dismiss the counterclaims of Skylands Community Bank ("Defendant Bank") and James D. Donnelly. Esq. ("Defendant Donnelly") (collectively, "Defendants") and to strike the Answer of Defendants.

**FACTUAL AND PROCEDURAL HISTORY**

On February 13, 2008, Debtor filed a no-asset, no-bar date voluntary petition under Chapter 7 Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"). Defendant Bank was not listed as a creditor in the Chapter 7 case. Debtor received a Chapter 7 discharge on May 16, 2008 ("Discharge").

1

On January 18, 2011, Defendant Bank filed a complaint in the Superior Court of New Jersey, bearing docket number GLO-L-001879-10 ("State Court Action") alleging Debtor breached a contract with Defendant Bank by failing to pay monies owed. Defendant Donnelly is the attorney representing Defendant Bank in the State Court Action. On February 4, 2011, Counsel for the Debtor sent Defendants a correspondence indicating that the State Court Action is a violation of the Debtor's discharge injunction. Counsel for the Debtor provided Defendants ten days to withdrawn the complaint in the State Court Action.

On February 9, 2011, Defendants responded and pointed out that Defendant Bank was not listed on the Debtor's bankruptcy schedules. Defendants further explained that the Debtor's Chapter 7 bankruptcy case was filed only five weeks after the Debtor signed the guaranty that is the subject of the State Court Action. Despite this short period of time, the Debtor's Personal Financial Statement did not disclose certain creditors that were listed on the Chapter 7 petition just five weeks later. Also, Debtor listed on his petition the fair market value of his home at a value $20,000 less than he did on the Personal Financial Statement. Therefore, Defendants advised the Debtor's counsel that, should Debtor reopen the bankruptcy case to schedule the debt, they reserved the right to seek a determination that the debt is nondischargeable under 11 U.S.C. § 523.

On February 16, 2011, the Debtor filed a Suggestion of Bankruptcy in the State Court Action. This filing was intended to provide notice to the state court of the Discharge. A copy of the same was provided to Defendant Donnelly on behalf of his client Defendant Bank. In response, on March 22, 2011, Defendant Donnelly filed a certification that stated that Defendant Bank was never scheduled and therefore the debt owed to Defendant Bank was not discharged. On March 23, 2011, Defendants filed a motion to enter final judgment in the State Court Action.

It is this court's understanding that the Defendants' motion has been withdrawn, but the State Court Action is still pending.

On April 6, 2011 in response to the State Court Action, Debtor filed an adversary complaint ("Complaint") in bankruptcy court against Defendants for violation of 11 U.S.C. §524(a)(2) and for harassment. Debtor contends that the Defendants' collection efforts constitute a violation of the discharge injunction and were done with malice in order to intimidate the Debtor.

On June 8, 2011, Defendants filed an answer ("Answer") to the Complaint and a counterclaim ("Counterclaim") against Debtor, which alleged the debt in dispute was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), (a)(3). Specifically, Defendants set forth that the debt at issue was procured by fraud. Defendants allege that Debtor materially and intentionally misrepresented his financial condition and Defendants relied on this misrepresentation when loaning Debtor the funds. In addition, Defendants allege that the Debtor's failure to schedule the debt or otherwise make Defendant Bank aware of the bankruptcy proceedings renders the debt nondischargeable under the Bankruptcy Code. Currently before the court is Debtor's Motion to Dismiss the Defendants' Counterclaim and Strike Their Answer.

As to the Motion to Dismiss the Counterclaim, the court understands the Debtor to argue that, since the Defendants did not allege in the State Court Action that the debt was procured by fraud and thereby nondischargeable, res judicata and the New Jersey entire controversy doctrine bar Defendants from now asserting nondischargeability. Debtor also argues that the Defendants should be judicially estopped from alleging inconsistent positions in the state and bankruptcy courts. The Debtor further argues that Defendants' Answer was not made in accordance with Fed. R. Civ. P. 8(b), made applicable to adversary proceedings pursuant to Fed. R. Bankr. P.

7008. When answering the Complaint, Defendants responded, "document speaks for itself" or other similar phrases to a number of the allegations set forth in the Complaint. Debtor contends that such answers are not proper and, therefore, the court should strike the Answer. For the reasons set forth *infra*, the court denies the Debtor's motion.

## DISCUSSION

I.     MOTION TO DISMISS COUNTERCLAIM UNDER THE DOCTRINE OF RES JUDICATA, THE ENTIRE CONTROVERSY DOCTRINE, AND JUDICIAL ESTOPPEL

According to Rule 12(b)(6), the court may dismiss a counterclaim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding the motion, the court accepts the factual allegations as true and construes the counterclaim in the light most favorable to the nonmoving party. *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). The court may grant the motion to dismiss only if the counterclaim "lack[s] facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Debtor attempts to use the doctrine of res judiciata, the entire controversy doctrine, and judicial estoppel to bar Defendants' nondischargeability claim in the Counterclaim. This court denies Debtor's motion to dismiss.

### A. *The Doctrine of Res Judicata*

The Debtor improperly relies on the doctrine of res judicata to dismiss the Counterclaim. The doctrine of res judicata ensures that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Brown v. Felsen*, 442 U.S. 127, 131 (1979)(quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Under New Jersey and

federal law, res judicata applies when the following are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)(quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). Since the purpose of res judicata is to bring finality to a conflict, it is immaterial whether the claim or defense sought to be barred was actually used in the prior proceeding. *Felsen*, 442 U.S. at 131; s*ee Reed v. Allen*, 286 U.S. 191, 201 (1932) (stating that the "very purpose of the doctrine of res judicata" is to avert "uncertainty and confusion" in final judgments). What is relevant, however, is whether the claim or defense was available to the party to use in the prior proceeding. *Id.*

The doctrine of res judicata prevents the relitigation of a resolved conflict. The doctrine requires first that there was a final judgment on the merits entered in the prior proceeding. *Mullarkey*, 536 F.3d at 225; *See also Felsen*, 442 U.S. at 131; *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948); *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 362-53 (1877). This ensures that the initial case was actually litigated to conclusion. Here, the State Court Action was not reduced to a final judgment. In fact, the case is still pending. Defendants set forth at the August 22, 2011 hearing before this court that the State Court Action is "frozen" and no decision has been entered. Debtor did not present any evidence to the contrary. Since a final judgment on the merits is a prerequisite to relief, the Debtor cannot take advantage of the doctrine of res judicata.

Notwithstanding the need for a final judgment, res judicata does not apply since Congress intended to leave matters of nondischargeability for the bankruptcy courts. The United States Supreme Court in *Brown v. Felsen* analyzed the application of res judicata to cases brought in state court but subsequently litigated in bankruptcy court. 442 U.S. at 128. In *Felsen*, prior to the debtor's filing for bankruptcy relief, a lender instituted a debt-collection proceeding against

5

the soon-to-be debtor and guarantor in state court. *Id.* The guarantor, however, alleged that the debtor made misrepresentations and failed to disclose material facts to the guarantor, thereby fraudulently inducing the guarantor's signature. *Id.* The suit settled by stipulation. *Id.* The terms of the settlement provided that the lender could recover from all the parties, jointly and severally, but the guarantor would also have a judgment against the debtor. *Id.* "Neither the stipulation nor the resulting judgment indicated the cause of action on which [the debtor's] liability to [the guarantor] was based." *Id.*

Subsequently in *Felsen*, the debtor filed for bankruptcy and sought to discharge the debt owed to the guarantor pursuant to the aforementioned judgment by stipulation. *Id.* The guarantor argued that the debt was the product of the debtor's fraud and therefore should not be discharged. *Id.* The debtor contended that the doctrine of res judicata barred the guarantor from relitigating a claim regarding a matter that was reduced to judgment. *Id.* at 129. Agreeing with the debtor, the bankruptcy court applied res judicata and barred the guarantor from producing extrinsic evidence of the debtor's fraud. *Id.* at 129-30. The court's decision was affirmed on appeal to the United States District Court for the District of Colorado and the United States Court of Appeals for the Tenth Circuit. The United States Supreme Court, however, reversed the Tenth Circuit's affirmance, finding that res judicata should not apply to the guarantor's nondischargeability cause of action. *Id.* at 130-31; s*ee In the Matter of Hawkins*, 231 B.R. 222, 230 (Bankr. D.N.J. 1999) (stating "the United States Supreme Court [in *Brown v. Felsen*] recognized that the Bankruptcy Code contains an exception to the Full Faith and Credit statute in the context of the dischargeability of debts").

In *Graham v. Internal Revenue Serv.*, the United States Court of Appeals for the Third Circuit analyzed *Felsen. (In re Graham)*, 973 F.2d 1089 (3d Cir. 1992). *Graham* explained that

6

the "policy of repose," which is essential to the doctrine of res judicata, is not undermined by the resistance of *Felsen* to use res judicata, since the debtor "erected the barrier of bankruptcy." *Graham*, 973 F.3d at 1094. By commencing an action in bankruptcy court, the debtor "upset the interest" his adversary and "society had in treating the prior state-court judgment as an end to [the] dispute." *Id.* Thus, although the policy of repose generally favors the use of res judicata, a party that commences a subsequent bankruptcy proceeding has "no right to [then] turn the doctrine of [res judicata] against" his adversary. *Id.*

Further, the court is able to maintain the status quo between bankruptcy courts and state courts by not applying the doctrine of res judicata to nondischargeability actions. *Id.* ("Allowing state courts to decide questions Congress wanted to commit to bankruptcy court would disturb the federal bankruptcy scheme"). The Supreme Court explains that Congress intended to reserve the question of dischargeability "exclusively for bankruptcy court." *Id.* at 1095. It is not uncommon for state law concepts on issues implicating bankruptcy law to deviate from the concepts adopted in bankruptcy court under federal law. *Id.* at 1094 (citing *Felsen*, 442 U.S. at 135). These discrepancies result in parties in state-court having little incentive to fully litigate issues relating to federal bankruptcy law. *See Felsen*, 442 U.S. at 135 (explaining that it will often be the case that at the time of the state court proceeding, the "debtor's bankruptcy is still hypothetical"). Due to the divergent interpretations of the bankruptcy code among state courts and bankruptcy courts, even if claims of dischargeability could be raised in state court, they are more appropriately left for the expertise of the bankruptcy court. *See Graham*, 973 F.2d at 1094-95 ("even though fraud could have been raised … there was no reason to raise the fraud question in the prior state proceeding"). To avoid the unnecessary burden of litigating issues of

7

bankruptcy law under the conjecture of a possible bankruptcy filing, issues of dischargeability are correctly left to the exclusive jurisdiction of bankruptcy court.

The bankruptcy court's exclusive jurisdiction for nondischargeability matters is, however, limited by a narrow exception. *In re Strano* determined that, when a debtor fails to schedule a debt, the debtor loses the benefit of the bankruptcy court's exclusive jurisdiction. *In re Strano*, 248 B.R. 493, 502 (Bankr. D.N.J. 2000). In such a case, the court then shares jurisdiction with other forums, providing the bankruptcy court with the option to remand or abstain from hearing the dischargeability issue. *Id.* at 503. This means the bankruptcy court may share jurisdiction for dischargeability issues, but only to the extent that the bankruptcy court in its discretion remands or abstains from hearing the matter. *See In re Strano*, 248 B.R. at 503 (explaining the analysis for choosing the appropriate forum for dischargeability matters is "analogous to, or the same as, the doctrine of abstention," which provides that a bankruptcy court has "discretion to retain jurisdiction of an adversary proceeding to determine nondischargeability or to remand or abstain").

It is therefore within the discretion of this court to abstain or remand the proceeding to the state court, should it determine that the state court would be the more appropriate forum. The Defendants' claim requiring a nondischargeability determination turns on the interpretation of Bankruptcy Code sections 523(a)(2)(B) and 523(a)(3). While some litigation that has bankruptcy issues may be more appropriately left in the state court, it is this court's opinion that the bankruptcy court is the more appropriate forum to determine the nondischargeability issues at hand.

The Debtor brought this adversary proceeding rather than litigating the issues in the State Court Action and is now asserting the doctrine of res judicata to bar the Defendants from

litigating their claims. In point of fact, Debtor could have litigated the dischargeability of this debt (including the issue of fraud) in the State Court Action. At the commencement of the State Court Action, Defendants were unaware of the Debtor's previous bankruptcy. To reduce Defendant Skylands's claim to judgment in the State Court Action it was not necessary to allege fraud. Since the Debtor has now chosen to litigate dischargeability in the bankruptcy forum, the Defendant cannot be deprived of the ability to assert nondischargeability by reason of fraud – particularly since there is no final judgment in the State Court Action. The Defendants are not barred by the doctrine of res judicata from alleging that the debt is nondischargeable under section 523(a)(3) of the Bankruptcy Code.

### B. *New Jersey's Entire Controversy Doctrine*

Debtor also relies on New Jersey's entire controversy doctrine under N.J.S.A. 4:30A to prevent Defendants from alleging nondischargeability in their Counterclaim. The entire controversy doctrine is an "equitable preclusionary doctrine" that requires "a litigant [to] assert all related claims against all parties in one action or be precluded from bringing a second action." Pressler, *Current N.J. Court Rules*, comment on *R.* 4:30A (2010); *In re Nugent*, 254 B.R. 14, 29 (Bankr. D.N.J. 1998) (quoting *Paterson v. Scherer (In re Hudsar, Inc.*), 199 B.r. 266, 277 (Bankr. D.N.J. 1996)); *see also DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995) (stating that the entire controversy doctrine applies when the successive and prior claims arise out of the same transaction or series of transactions and from the same or related facts). The New Jersey statute provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine…." N.J.S.A. 4:30A.

The preclusionary effects of the entire controversy doctrine occur when the party bringing the claim "had a fair and reasonable opportunity to have fully litigated that claim in the original action." *DiTrolio*, 142 N.J. at 273 (quoting *Cafferata v. Peyser*, 251 N.J.Super. 256, 261 (App. Div. 1991)). "[A] party will not be barred from raising additional claims in a subsequent proceeding if he was unable to assert these claims in the initial proceeding." *Hawkins*, 231 B.R. at 232. For instance, the doctrine will not apply to a claim that was barred for want of jurisdiction or that was unknown or had not accrued at the time of the original action. *In re Hurley*, 285 B.R. 871, 876 (Bankr. D.N.J. 2002); *Hawkins*, 231 B.R. at 232. Ultimately, the determination of the applicability of the doctrine is "left to judicial discretion based on the factual circumstances of individual cases." *Brennan v. Orban*, 145 N.J. 282, 291 (1996); *Prevratil v. Mohr*, 145 N.J. 180, 190 (1996).

Debtor argues the entire controversy doctrine precludes Defendants from alleging nondischargeability here because they failed to argue nondischargeability in the State Court Action. The court finds this argument unpersuasive. The State Court Action is a breach of contract, debt-collection action, whereas the Counterclaim sets forth a nondischargeability claim. In order to collect on the breach of contract action, Defendants need to show only that Debtor failed to pay when the debt became due, not that Debtor's conduct was fraudulent. *See Hurley*, 285 B.R. at 876 (finding the entire controversy doctrine did not apply to the nondischargeability action in bankruptcy court where the original action was a foreclosure action and the creditor did not need to establish fraud to recover). Further, the State Court Action is still pending and was commenced without knowledge of the bankruptcy. The entire controversy doctrine prevents litigating claims where the party had a full and fair opportunity to be heard. With the State Court

Action pending, there is no reason to preclude Defendant's claims or defenses here in bankruptcy court.

### C. The Doctrine of Judicial Estoppel

Debtor's further argues that the court should apply the doctrine of judicial estoppel to the matter at hand in order to prevent Defendants from including section 523(a) nondischargeability claims in its Counterclaim. According to the Debtor, the Defendants' current position in the Counterclaim is inconsistent with its position in the State Court Action and therefore infringes on the integrity of the judiciary.

Under the equitable doctrine of judicial estoppel, a court may impose a sanction against a litigant who presents a position in bad faith that is inconsistent with one that litigant previously presented to a court or agency. *New Hampshire v. Maine*, 523 U.S. 748, 749-50 (2001). In the Third Circuit the relevant issues to consider are the following:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – i.e., with the intent to play fast and loose with the court. Finally, a [court] may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001)(internal citations and quotations omitted). Additionally, judicial estoppel is not appropriate if the litigant was unable to convince the court of its initial position. *See G-I Holding, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009)("[I]n our Circuit judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position.").

11

The court must first identify the positions of the Defendants to determine if they are clearly inconsistent. *Zedner v. United States*, 547 U.S. 449, 504, 506 (2006). The Supreme Court analyzed what a finding of clearly inconsistent requires. In *New Hampshire*, the parties entered a consent order in a prior proceeding, which defined what a certain phrase in a document was intended to mean. 532 U.S. 742, 747-48 (2001). In the subsequent proceeding, the same phrase was at issue and New Hampshire sought to use a different and conflicting definition that was more beneficial to its subsequent argument. *Id.* The Court stated that it "cannot interpret [the phrase] to mean two different things … without undermining the integrity of the judicial process." *Id.* at 755. The Court applied the doctrine of judicial estoppel and used the original meaning of the phrase as set forth in the consent order. *Id.*

The Court reached a contrary conclusion in *Zedner*. There the Court found that the litigant's argument that the granting of a continuance was within the discretion of the judge was not clearly inconsistent with "its later position that the continuance was not permissible under the terms of the act" at issue. *Zedner*, 547 U.S. at 605. The Court found these two positions could be reconciled and the integrity of the judicial system was not at risk. Thus, judicial estoppel was not appropriate.

Here, the Defendants' positions are not clearly and irreconcilably inconsistent. Defendants commenced the State Court Action alleging breach of contract to recover money it was owed pursuant to a credit arrangement between Defendant Bank and Debtor. Before this court, Defendants allege in the Counterclaim that the Debtor's discharge injunction does not discharge Debtor's debt with regards to the credit arrangement, as that debt was procured by the Debtor's fraud and is, therefore, nondischargeable. The Defendants' two positions are not in conflict. The Defendants initial position was in a state court proceeding to collect a debt owed to

it, while the later position was brought in bankruptcy court with the intention of countermanding the discharge injunction with regards to its claim against the Debtor. The Defendants' position set forth before this court is not contrary to the position in the State Court Action. In fact, Defendants' position here provides support for its state court claim.

Additionally, Defendants' position in bankruptcy court cannot be inconsistent with the State Court Action because the issue of nondischargeability was never addressed. More specifically, Defendants current position cannot be considered inconsistent with their earlier position if they never knew of the bankruptcy and thus never took an earlier position regarding nondischargeability. Moreover, since there was no earlier decision there is no danger of inconsistent holdings that would infringe on the integrity of the court. Therefore, the Defendants have not set forth clearly and irreconcilably inconsistent positions, and judicial estoppel does not apply. *See Krystal Cadillac-Oldsmobile GMC Truck v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)(finding that "[j]udicial estoppel is … not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be").

Alternatively, the Defendants did not change their position with the intent of playing fast and loose with the courts. In *Montrose*, the Third Circuit analyzed the bad faith prerequisite for finding judicial estoppel. The Court found that bad faith requires that the litigant "behave in a manner that is somehow culpable" and that the behavior assault "the dignity or authority of the court." *Montrose*, 243 F.3d at 781. The culpability prong of bad faith is intended to sanction intentional wrongdoing that resulted in the litigant obtaining an unfair advantage. *Id. Montrose* also makes clear that judicial estoppel is about the integrity of the court and not how one litigant's claim affects his/her adversary. *Id.* Further, *Montrose* holds that "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim

was never accepted or adopted by a court." *Id.* at 782; *see G-I Holdings, Inc*, 586 F.3d at 262 (refusing to consider any of the factors of judicial estoppel because the prior court was not convinced by the litigant's earlier position); *In re Mattera*, No. 07-01216, 2010 WL 148425, at *5 (Bankr. D.N.J. Jan. 12, 2010)(concluding there was no danger that the litigant benefited from her inconsistent positions because the prior court did not accept her initial position).

Although this court does not believe Defendants engaged in intentional wrongdoing, it is not necessary to reach a decision regarding bad faith. The Debtor has failed to show that the state court relied or accepted the Defendants' initial position. Assuming arguendo that the Defendants did set forth inconsistent positions, the state court never ruled on Defendant Bank's Motion to Enter Judgment. If the state court has not accepted Defendant Bank's initial position, then there is no danger to the integrity of the court. Further, Debtor has not otherwise shown that Defendants played fast and loose with the courts. In fact, the Defendants commenced the State Court Action without knowledge of the Debtor's previous discharge because the Debtor failed to schedule Defendant Bank's debt or otherwise provide them with notice of the Chapter 7 case. Therefore, Defendants will not be judicially estopped from pursuing their nondischargeability claims against the Debtor.

## II.  MOTION TO STRIKE ANSWER AND AFFIRMATIVE DEFENSES UNDER RULE 8(b)

Fed. R. Civ. P. 8(b)(1), made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7008, states that "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." The response in the answer must "fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). Under Rule 8(b)(6), an allegation is

deemed admitted if it is not denied, unless a response is not needed. A court has the power to strike from an answer "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(f).

"Motions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party." *Tivoli Realty v. Paramount Pictures*, 80 F.Supp. 800, 803 (D.Del. 1948). While courts are "afforded considerable discretion when addressing a motion to strike," a court will deny a motion to strike an answer if the moving party cannot show prejudice from the challenged allegations. *Charleston v. Salon Secrets Day Spa, Inc.*, No. 08-5889, 2009 WL 1795529, at *1 (E.D. Pa. June 24, 2009); *Blackwell v. Am. Airlines, Inc.*, No. 98 C 6856, 2003 WL 732574 (N.D.Ill. Mar. 3, 2003).

Debtor contends that the Defendants' responses setting forth that the "document speaks for itself" or other similar phrases are insufficient under the Rules and should be struck. The Defendants argue that they were merely attempting to respond to Debtor's legal conclusions that were masquerading as factual assertions in the Complaint. This court exercises its discretion to deny the motion to strike the answer. First, Debtor has not alleged any prejudice or harm resulting from Defendants' responses. Second, Rule 8(b) provides that any allegation in the complaint requiring a response is deemed admitted if no response is provided. Thus, the Defendants' responses that the "document speaks for itself" is deemed an admission as to the information in the document. The Defendants have otherwise acted in accordance with the Rules and, therefore, the motion to strike the answer is denied.

## **CONCLUSION**

For the reasons described above, Debtor's motions to dismiss the Counterclaim and strike the Answer is denied.

Very truly yours,

NOVALYN L. WINFIELD<br>United States Bankruptcy Judge

NLW/eab